UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

DAVID LOUIS WHITEHEAD,
    *Plaintiff*,

    v.

TRAVELERS INSURANCE
COMPANY, *et al.*,
    *Defendants*.

No. 3:20-cv-01140 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

David Louis Whitehead ("Plaintiff") has filed a lawsuit against Travelers Insurance

Company, Inc. ("Travelers"), Gabrielle Bailey (together, "Defendants" or the "named

defendants"), and John Does 1-10 (the "unnamed defendants"). Compl., ECF No. 1 (Aug. 10,

2020); Am. Compl., ECF No. 2 (Aug. 10, 2020); 2d Am. Compl., ECF No. 19 (Nov. 10, 2020).

Mr. Whitehead brings twelve claims against Defendants: (1) personal injury; (2) negligence; (3)

violations of privacy; (4) civil rights violations under the Fifth and Fourteenth Amendments; (5)

race discrimination; (6) intentional infliction of emotional distress; (7) obstruction of justice; (8)

pain and suffering; (9) anti-trust violations; (10) violations of the Lanham Act; (11) violations of

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Section 1962 ("RICO") ; and

(12) retaliation. 2d Am. Compl. at 1 ¶ 1.

Defendants have moved to dismiss all claims.[1] Mot. to Dismiss, ECF No. 34 (Dec. 14,

2020) ("Defs.' Mot.").

---

[1] In the memorandum in support of their motion to dismiss, Defendants state that "while the caption [of this case] lists John Does 1-10, [they] are unable to ascertain the relationship of any such defendants to this action from the allegations of the Complaint." Mem. of L. in Supp. of Mot. to Dismiss, ECF No. 35 at 1(Dec. 14, 2020) ("Defs.' Mem."). In the memorandum they notify the Court that "[i]f the Court finds [John] Does 1-10 are impliedly or expressly alleged to be employees of Travelers, Defendants . . . ask that they be dismissed from the action for all the

For the reasons set forth below, Defendants' motion to dismiss is **GRANTED,** with prejudice**,** and all claims made against the John Doe 1-10 are **DENIED** with prejudice.

The Clerk of Court is respectfully directed to close this case.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Mr. Whitehead's Complaint stems from an incident allegedly "[o]n or about February 22, 2016, . . .  at a computer terminal in the Shreveport Library" in Shreveport, Louisiana. 2d Am. Compl. at 3 ¶ 4. Mr. Whitehead alleges that upon "leaving the computer terminal he . . . walked into [an] object causing st[r]ain neck injury to his head." *Id.* Mr. Whitehead allegedly "immediately advised the employee who worked on the [third] floor of the Library[,] where the accident occurred." *Id.* at 4 ¶ 9. "The employee [allegedly] did not ask any of the witnesses who saw the incident." *Id.* "[H]owever, she did [allegedly] . . . call her supervisor who reported the incident to Travelers Insurance [C]ompany." *Id.* "Defendants [allegedly] did not call [for Emergency Medical Services] nor the police." *Id.* "Instead, [D]efendant[s] and their client [allegedly] placed a large desk underneath the large overhead object." *Id.*

"On or about February 27, 2016, [Mr. Whitehead] allegedly was seen at the [Veterans Administration ("VA")] Medical Center for his [alleged] head injury." *Id.* at 5 ¶ 11. "[A]fter [x-rays] were taken at the VA Medical Center," a "VA [p]hysician [allegedly] diagnosed that [Mr. Whitehead] had received a '[s]train [n]eck' injury." *Id.* "[T]he doctor [allegedly] gave [Mr. Whitehead] a shot and recommended further treatment for the injury." *Id.* The VA Medical

---

reasons set forth [in the memorandum]." *Id.* at 1 n.1. The Court finds that the substantial difference in claims brought against the named defendants, 2d Am. Compl. at 10-12, and the unnamed defendants, *id.* at 12-14, warrant separate analyses, and, therefore, addresses the claims made against the Defendants and John Does 1-10 separately in this Ruling.

Center's treatment for Mr. Whitehead's injury allegedly "included 10 weeks of physical training." *Id.* at 6 ¶ 17.

"Prior to [the] VA Medical Center['s] treatment [Mr. Whitehead allegedly] attempted to be treated at the Eastgate [C]hiropractor [C]linic . . . in Bossier City, Louisiana." *Id.* However, "Dr. Chad of the Clinic [allegedly] sent [Mr. Whitehead] an e[-]mail stating that his office had been in contact with Travelers Insurance Company on the matter and he could not treat [Mr. Whitehead] without fees paid." *Id.* at 6 ¶ 18.

"On or about November and December 2016," Mr. Whitehead allegedly "complained that he felt numbness in his left shoulder and arm," and was allegedly "advised that he needed a[n] MRI relating to his neck problems," and a "VA Doctor ordered a[n] MRI." *Id.* at 5 ¶ 14.

Mr. Whitehead allegedly "notified [Travelers] about the most recent development relating to his neck injury," and a Travelers Claims Manager allegedly "sent [him] an e[-]mail rejecting compensation to [Mr. Whitehead]." *Id.* at 5 ¶ 15. "Travelers employee Ms. Bailey also [allegedly] rejected compensation to the [VA]." *Id.* Defendants allegedly "advised the Veterans Administration employee . . . that [the] would not pay [Mr. Whitehead's] personal injury claims . . . although [D]efendants [allegedly] had photographic evidence that the accident occurred as reported." *Id.* at 6¶ 16.

### B. Procedural History[2]

On August 10, 2020, Mr. Whitehead filed his initial Complaint. Compl.

On the same day, Mr. Whitehead filed his first Amended Complaint. Am. Compl.

On October 13, 2020, Mr. Whitehead moved to file a second Amended Complaint. Mot. to Amend, ECF No. 11, (Oct. 13, 2020).

---

[2] The Court provides solely the procedural history relevant to the pending motion to dismiss and the claims made against John Doe 1- 10.

On October 27, 2020, the Court granted Mr. Whitehead's motion to amend. Order, ECF No. 12 (Oct. 27, 2020).

On November 2, 2020, Mr. Whitehead moved for this Court's recusal. Mot. to Recuse Judge, ECF No. 16 (Nov. 2, 2020). Am. Mot. to Recuse Judge, ECF No. 17 (Nov. 2, 2020).

On November 10, 2020, Mr. Whitehead filed his second Amended Complaint. 2d Am. Compl.

On November 14, 2020, the Court denied Mr. Whitehead's motion for recusal. Order, ECF No. 21 (Nov. 14, 2020).

On November 16, 2020, Mr. Whitehead filed Notice of Interlocutory Appeal to appeal the Court's decision regarding his motion for recusal. Notice, ECF No. 24 (Nov. 16, 2020).

On December 14, 2020, Defendants filed a motion to dismiss all claims made against them. Defs.' Mot.; Defs.' Mem.

On January 4, 2021, Mr. Whitehead filed an objection to Defendants' motion to dismiss. Pl.'s Opp'n to Def.'s [sic] 12(b)(6) Mot. to Dismiss, ECF No. 44 (Jan. 4, 2021) ("Pl.'s Opp'n").

## II.   STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.   DISCUSSION

Mr. Whitehead brings forth twelve claims against Defendants and John Doe 1-10: (1) personal injury; (2) negligence; (3) violations of privacy; (4) civil rights violations under the Fifth and Fourteenth Amendments; (5) race discrimination; (6) intentional infliction of emotional distress; (7) obstruction of justice; (8) pain and suffering; (9) anti-trust violations; (10) violations of the Lanham Act; (11) violations of RICO; and (12) retaliation. *See* 2d Am. Compl. at 1. Defendants have moved to dismiss each of these claims on several grounds. *See* Def. Mem. at 2.

To the extent necessary, the Court will address Defendants' arguments in turn.

### A.  The Direct Action Argument

To the extent that this lawsuit belongs in federal court in this District, the Court would be exercising diversity jurisdiction, and would have to decide whether the substantive law of Connecticut or Louisiana applied. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013) ("[A] federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would apply if the suit were brought in state court.").

In Connecticut, "[a] plaintiff, in presenting facts sufficient to establish the court's jurisdiction, must present specific, and not simply conclusory, allegations." *Matthews v. SBA, Inc.*, 149 Conn. App. 513, 552 (2014). "[A]bsent a direct contractual relationship between the

[injured] party bringing the action and the insurance company [of the alleged tortfeasor], or a third-party beneficiary relationship, an injured party is precluded from bringing a direct action for negligence against the insurer until judgment is obtained against the tortfeasor." *Alexander v. W.F. Shuck Petroleum Co.*, No. HHBCV085010050, 2009 WL 2783587, at *2 (Conn. Super. Ct. Aug. 3, 2009). "The mere fact that the third party will receive a benefit if the insurer fulfills its contractual obligations to the insured does not make the third-party claimant a third-party beneficiary." *Cholewa v. Hill*, No. CV156025338, 2017 WL 5642283, at *5 (Conn. Super. Ct. Oct. 25, 2017) (quoting *Chapell v. Larosa*, No. CV–99–0552801–S, 2017 WL 5642283 (Conn. Super. Ct. Jan. 5, 2001). Indeed, Connecticut courts have "consistently determined that 'a claimant does not have a direct cause of action against an insurance company of the tortfeasor . . . .'" *Alexander*, 2009 WL 2783587, at *2 (quoting *Asmus Elec., Inc. v. G.M.K. Contractors, LLC*, No. CV040489527, 2005 WL 758126, at *5 (Conn. Super. Ct. Feb. 25, 2005)).

The state of Louisiana, on the other hand, explicitly allows for injured parties to bring direct actions against the tortfeasor's insurer. *See* LSA–R.S. 22:1269 (the "Direct Action Statute"). Louisiana's Direct Action Statute "grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured." *Soileau v. Smith True Value & Rental*, 2012-1711 (La. 6/28/13), 144 So. 3d 771, 775. The Supreme Court of Louisiana has explained that "[t]he Direct Action Statute was enacted to give special rights to tort victims." *Id.*; *see also Grubbs v. Gulf Int'l Marine, Inc.*, 625 So. 2d 495, 498 (La. 1993) ("[I]t is well settled that the statute is remedial and should be liberally construed to accomplish its purpose of affording a person suffering loss or damage a direct action against a tortfeasor's insurer."). Indeed, Louisiana courts have continuously enforced this "procedural right" of injured parties. *See e.g.*, *Gorman v. City of Opelousas*, 2013-1734 (La. 7/1/14), 148 So. 3d 888, 896

("[T]he Direct Action Statute 'grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured.'" (quoting *Hood v. Cotter*, 2008-0215 (La. 12/2/08), 5 So. 3d 819, 829)); *see also Sanders v. Nexion Health at Minden, Inc.*, No. 5:18-CV-0263, 2018 WL 4265256, at *4 (W.D. La. Sept. 6, 2018) (same).

The Supreme Court also has declared Louisiana's Direct Action Statute constitutionally sound. *See e.g.*, *Watson v. Emps. Liab. Assuance Corp.*, 348 U.S. 66 (1954). In *Watson*, the injured parties brought an action in Louisiana state court claiming damages for personal injuries caused by a hair product, and the Supreme Court held that "Louisiana has a constitutional right to subject foreign liability insurance companies to the direct action provisions of its laws whether they consent or not." *Id.* at 74.

The parties do not dispute that Travelers is the insurer of the library where Mr. Whitehead's alleged injury took place. *See* 2d Am. Compl. at 3 ¶ 5 ("[D]efendants and their clients were seriously aware that [P]laintiff injured his head and neck at the Shreveport Library."); Def.'s Mem. at 1 ("Plaintiff brings this action in connection with an injury allegedly sustained on February 22, 2016 at a library in Louisiana that is insured by Travelers.").

Mr. Whitehead argues that "Travelers Insurance employees instructed the [VA] [Medical C]linic that [Travelers] would not cover [his alleged] injury cost." 2d Am. Compl. at 5 ¶ 12. He further argues that Travelers "and [its] employees went on a witch hunt investigating [his] other accidents." *Id.* at 5 ¶ 13. Mr. Whitehead alleges that after he "complained that he felt numbness in his left shoulder and arm[,] [a] VA [d]octor order[ed] a[n] MRI," *id.* at 5 ¶ 14, and he "notified Travelers . . .about the most recent development relating to his neck injury, *id.* at 5 ¶ 15. Mr. Whitehead argues that because Defendants "would not pay [the] cost for medical treatment . . ,

which was [allegedly] needed due to the [alleged] negligence of Shreveport Library," he was "prevented immediate treatment for his [alleged] injury." *Id.* at 6 ¶ 17.

Defendants argue that Mr. Whitehead "improperly seeks to assert a direct action without having first obtained judgment against the insured and/or has no substantive right of action against the Library." Def. Mem. at 16. According to Defendants, Mr. Whitehead "is not a beneficiary of the [the Shreveport Library's insurance p]olicy . . . [and] does not have an existing claim against the Library." *Id.* at 17.

The Court disagrees.

In Connecticut, the law of the state with the "most significant relationship" to the transaction and parties . . . [is] applied absent a choice of law provision in the insurance contract, *Reichhold Chems., Inc. v. Hartford Accident and Indem. Co.*, 252 Conn. 774, 781 n.4 (2000); *see also* Restatement (Second) of Conflicts of Law § 188. "In the absence of extraordinary circumstances, the law of the state where the principal insured risk is located will apply." *Reichhold Chems.*, Inc., 252 Conn. at 782 (noting that Connecticut law specifically recognizes "a rebuttable presumption in favor of the state where the insured risk is located.").

Louisiana's Direct Action Statute allows for an injured person or his or her survivors or heirs. . . a right of direct action against the insurer within the terms and limits of the [insured's] policy." LSA–R.S. 22:1269(B)(1). The Statute provides that any

> such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer . . . .

*Id.*

This lawsuit stems for an alleged injury that allegedly took place in Shreveport, Louisiana. *See* 2d Am. Compl. at 3 ¶ 4. Rather than suing the Shreveport Library, Mr. Whitehead

seeks to bring a direct suit against the Library's insurance company. *See id.* ¶ 8. While Mr.

Whitehead does not allege to have a contractual relationship with Travelers nor a connection

with the insurance company outside of the alleged incident, courts applying Louisiana law

consistently have shown these claims to be viable under Louisiana law. *See Lumbermen's Mut.*

*Cas. Co. v. Elbert*, 348 U.S. 48, 53 (1954) ("In Louisiana the practice of bringing direct actions

in the federal courts has long been recognized.").

An injured party is not permitted to bring an action against an insurance person in all

situations. *See Soileau*, 144 So. 3d at 776-77 (detailing the circumstances under which the Direct

Action Statute is operable). Indeed, the Direct Action Statute states that these actions

> may be brought against the insurer alone only when:
>
> a) The insured has been adjudged a bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured a bankrupt have been commenced before a court of competent jurisdiction;
>
> (b) The insured is insolvent;
>
> c) Service of citation or other process cannot be made on the insured;
>
> (d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents or between married persons;
>
> (e) When the insurer is an uninsured motorist carrier; or
>
> (f) The insured is deceased.
>
> (2) This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if such provisions are not in violation of the laws of this state.

LSA–R.S. 22:1269(B)(1)-(2). The Louisiana Supreme Court also has been clear that insurance companies are unable to frame contract language to avoid the possibility of being sued by an injured party. *See Quinlan v. Liberty Bank & Tr. Co.*, 575 So. 2d 336, 352 (La. 1990), on reh'g (Mar. 11, 1991) (plurality opinion) ("[T]he Direct Action Statute is a mandate for a tort victim to bring a direct suit to recover damages for personal injury or corporeal property damage from the tortfeasor's insurer, regardless of whether the insurer has framed the policy as a liability or an indemnity contract. It would lead to absurd consequences to interpret the statute as permitting an insurer to insulate itself from such an action by framing its policy as an indemnity contract or by inserting a 'no action' clause in its policy.")

In this case, even if the insurance policy between Travelers and the Shreveport Library is in some way connected to another state, under Louisiana's Direct Action Statue, at least at this stage of this case, Mr. Whitehead may be permitted to bring claims against Travelers, Shreveport Library's insurance company, directly, although perhaps not. *See* LSA–R.S. 22:1269(B)(1)-(2) (limiting circumstances where a direct action claim can be brought against an insurance company alone).

Accordingly, Defendants' motion to dismiss because of the lack of direct action, will be denied, given Louisiana's substantive law potentially permitting such a claim.

**B.  The Statute of Limitations Argument**

"In cases grounded on diversity jurisdiction[,] the court must apply 'the statute of limitations that the court of the forum state would apply.'" *Norton v. Michonski*, 368 F. Supp. 2d 175, 179 (D. Conn. 2005) (quoting *Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 518 (1953)). "Under Connecticut law, statute of limitations are generally considered 'procedural.'" *Id.* (quoting *Baxter v. Sturm, Ruger and Co., Inc.*, 230 Conn. 335, 339 (1994)).

11

Although "[a] statute of limitations analysis is generally riddled with questions of fact which the Defendants must establish in order to bar Plaintiff['s] claims[,]" "where the dates in a complaint clearly show that an action is barred by a statute of limitations [ ] a defendant [may] raise the affirmative defense in a pre-answer motion to dismiss." *Bartold v. Wells Fargo Bank, N.A.*, No. 14-cv-00865 (VAB), 2015 WL 7458504, at *4 (D. Conn. Nov. 24, 2015); *see also Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) ("'Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar,' such as lack of timeliness, 'as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" (quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008))); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.").

The Supreme Court also has developed the general rule that any complaint, not solely those alleging negligence or personal injury, should be dismissed if it is clear the statute of limitations has passed. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). In *Jones*, the Court explained,

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.

*Id.*

In this case, regardless of the statute of limitations period applied, Mr. Whitehead's claims have been brought too late.

Connecticut law provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577. Connecticut law applies a two-year statute of limitation to negligence claims under Conn. Gen. Stat. § 52-584. Mr. Whitehead, however, brought his claims well after the expiration of the three-year statute of limitations period. The underlying injury occurred on February 22, 2016. 2d Am. Compl. at 2. Mr. Whitehead, however, did not file his initial complaint with this Court until August 10, 2020 – more than four years after the alleged incident. Mr. Whitehead has failed to meet the statute of limitations for any of the claims made in the second amended complaint; *See* 2d Am. Compl. at 1 ¶ 1 (listing claims); *but see* Conn. Gen. Stat. Sect. 52-577 ("[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); *see also* 15 U.S.C. § 15b. [3] ("[C]ivil RICO claims 'shall be forever barred unless commenced within four years after the cause of action accrued.'").

The application of Louisiana law would have created an even earlier deadline for the filing of this lawsuit. *See* La. Civ. Code art. 3492 ("Delictual actions a subject to a liberative prescription of one year."); *see also Stevenson v. Progressive Sec. Ins. Co.*, No. 2019-C-00637, 2020 WL 1671565 (La. Mar. 3, 2020) (When reviewing the plaintiff's personal injury claims, the Supreme Court of Louisiana found "Plaintiffs' tort suit is subject to the one-year liberative prescription for delictual actions, commencing the day the injury or damage is sustained. The accident giving rise to plaintiffs' suit occurred on December 13, 2016. Therefore, the petition,

---

[3] Under the civil RICO Statute, Mr. Whitehead had to file his claim by February 22, 2020. Instead, he filed the Complaint in August 20, 2020, six (6) months after the deadline.

filed on December 14, 2017, was prescribed on its face." (citing La. Civ. Code art. 3492));

*Lawrence v. Ctr. Properties, LLC*, 847 F. App'x 254, 256 (5th Cir. 2021) ("Under Louisiana law,

personal injury claims are subject to a one-year limitations period. LA. Civ. Code art 3492

('Delictual actions are subject to a liberative prescription of one year.'); *Id.* cmt.(b) ('The notion

of delictual liability includes: intentional misconduct, negligence, abuse of right, and liability

without negligence.'). The prescriptive period begins from the date injury or damage is

sustained. La. Civ. Code art. 3492. Damage is considered to have been sustained when the

plaintiff reasonably should be aware of enough facts to support a cause of action.").

Significantly, in 2017, Mr. Whitehead sued Caddo Parish, Louisiana for the same alleged

incident in the Shreveport Library. *See Whitehead v. Parish of Caddo,* No. 1:17-cv-00306-DDD-

JPM, ECF No. 5 at 1 (W.D. La. Mar. 19, 2017) ("The Complaint was filed on February 21, 2017

. . . Plaintiff states that on February 22, 2016, he was working at a computer terminal at the

library in downtown Shreveport. . . . Plaintiff believes there is 'photographic evidence of the

accident' but 'defendant will not release the photographic evidence to the plaintiff. . . . It is well

settled that federal courts have no general power to compel action by state officials."). In other

words, Mr. Whitehead waited three years after the filing of his lawsuit directly against the

governmental entity related to his alleged injury before filing this lawsuit here. *See id.*

Consequently, all of Mr. Whitehead's claims are time barred and cannot be brought in

this Court. *See Sec. & Exch. Comm'n v. Cohen*, 332 F. Supp. 3d 575, 587 (E.D.N.Y. 2018)

("Although statutes of limitations are ordinarily affirmative defenses, a court may dismiss a

complaint for failure to state a claim if the allegations in the complaint, taken as true, show that

relief is barred by the applicable statute of limitations." (quoting *Jones v. Bock*, 549 U.S. 199,

215 (2007)).

Accordingly, Defendant's motion to dismiss will be granted.

### C.  The Claims Against John Doe 1-10[4]

Mr. Whitehead also brings claims against ten unnamed defendants for alleged "[r]ace [d]iscrimination, 2d Am. Compl. at 8 ¶ 21,"antitrust violations and Lanham Act violations." *See* 2d Am. Compl. at 14. He argues that "Unnamed Defendants 1 through 10 solicited [his] copyrighted intellectual properties and rejected them, including [his] 30 film deal proposal, to create fraudulent products based on [his] works." *Id.* ¶ 21.

But nothing in in his second Amended Complaint suggests that these claims involve the underlying action brought here. The claims brought by Mr. Whitehead have no apparent link to them, nor the events of this case for that matter. *See Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed. App'x. 16, 19 (2d Cir. 2015) ("A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place."); *see also United States v. Brow*, 462 F. App'x 19, 21 (2d Cir. 2012) ("[Plaintiff]'s third-party complaints were practically devoid of factual allegations, aside from his contentions concerning [third-party defendant]'s response to a subpoena in an unrelated action, and contained only the most conclusory of accusations against the [third-party defendant]. Specifically, his contentions that [the third-party defendant] had committed fraud, negligence, and breach of fiduciary duty were supported by no relevant fact. Pleadings of such deficient nature plainly warrant dismissal.").

---

[4] To the extent that any of the same causes of action brought against Travelers also are brought against John Doe 1-10, those claims also would be dismissed as untimely. In addition, to the extent that the alleged copyright infringement claims arose at the same time as the alleged Shreveport library incident, over four years ago, those claims would be time-barred as well. *See Sohm v. Scholastic, Inc.*, 959 F.3d 39 (2d Cir. 2020) ("Civil actions for copyright infringement must be commenced within three years after the claim accrued." (internal quotation marks omitted)).

The claims of "copyright infringement" have no connection whatsoever to an alleged "st[r]ain neck injury to [Mr. Whitehead's] head," 2d. Am. Compl. at 3 ¶ 4, and Mr. Whitehead has brought these same baseless allegations regarding the same alleged "copyright" issue and alleged "biases" in various courts across the nation, often leading to him being both barred and sanctioned by those courts, *see e.g.*, *Whitehead v. White & Case, L.L.P.*, 519 F. App'x 330, 332 (5th Cir. 2013) ("In his myriad pleadings, Whitehead makes a variety of disjointed and conclusory allegations of copyright violations, judicial conflicts of interest, and a wide ranging conspiracy to retaliate against him for his claims. As the district court noted, Whitehead has raised similar claims in other courts, which have often been dismissed as frivolous and for which he has been sanctioned for his vexatious litigation. Whitehead's claims in the instant proceeding represent another attempt to raise the same frivolous and vexatious claims in a new forum. Therefore, his IFP motion is DENIED, and his appeal is DISMISSED as frivolous." (internal citations omitted) (emphasis in original)); *Whitehead v. White & Case, LLP*, No. 12-CV-0399, 2012 WL 1795151, at *4 (W.D. La. Apr. 19, 2012), *report and recommendation adopted*, No. 12-CV-0399, 2012 WL 1795148 (W.D. La. May 16, 2012) ("This complaint warrants swift dismissal to avoid any further waste of the court's time or the incurring of attorney fees and expenses by the many defendants. . . . Plaintiff's allegations are so patently frivolous and vexatious that the defendants should not be required to respond to the complaint and litigate those defenses (which some defendants have already had to do in other jurisdictions) . . . Allowing Plaintiff to continue to consume the resources of the court and the community with frivolous filings delays justice for citizens who have legitimate business before the court and does not promote the interests of justice. A sanction adequate to deter such wasteful abuse is in order."); *Whitehead v. Paramount Pictures Corp.*, No. 1:08CV792 AJTTRJ, 2009 WL 1565639,

16

at \*4 (E.D. Va. May 28, 2009), *aff'd in part sub nom., Whitehead v. Paramount Pictures, Inc.*,
366 F. App'x 457 (4th Cir. 2010) ("Until Plaintiff can satisfy the requirements of the pre-filing
inquiry, he may not file another lawsuit in the district court for the Eastern District of Virginia.
Plaintiff must also seek and obtain leave to file any new motions, papers or requests for relief in
any civil actions currently pending in the Eastern District of Virginia, including this case."); *see
also Whitehead v. Paramount Pictures Corp.*, 145 F. Supp. 2d 3, 3 (D.D.C. 2001), *aff'd sub nom.
Whitehead v. Paramount Picture Corp.*, No. 01-7062, 2001 WL 936260 (D.C. Cir. July 27,
2001) ("Whitehead D.D.C") (listing cases).

In the absence of any viable basis for these alleged copyright claims, and how they
plausibly could entitle Mr. Whitehead to relief, see *Iqbal*, 556 U.S. at 679 ("[O]nly a complaint
that states a plausible claim for relief survives a motion to dismiss."), these claims will be
dismissed.

Accordingly, all claims made against the John Doe 1-10 will be dismissed.

**D.  Leave to Amend**

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course within:
> (A) 21 days after serving it, or (B) if the pleading is one to which a
> responsive pleading is required, 21 days after service of a responsive
> pleading or 21 days after service of a motion under Rule 12(b), (e),
> or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the
opposing party's written consent or the court's leave. The court should freely give leave when
justice so requires." Fed. R. Civ. P. 15(a)(2). The district court has broad discretion to decide a
motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*,
145 F.3d 85, 89 (2d Cir. 1998).

If a court chooses to deny leave to amend, however, it must give some "justifying reason" for doing so. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)).

Mr. Whitehead has clearly missed the statute of limitations of all claims in this case. And all of the claims against John Doe 1-10 are both time barred and lacking in any discernible basis. Mr. Whitehead also has brought frivolous claims that have led to him becoming barred and sanctioned by courts across the country. Therefore, this Court finds that any attempt to cure the defects that have resulted in this case's dismissal would be futile. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) ("One good reason to deny leave to amend is when such leave would be futile.").

Accordingly, Mr. Whitehead's second Amended Complaint will be dismissed without leave to amend.

**IV.      CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED,** with prejudice**,**

and all claims made against the John Doe 1-10 are **DENIED** with prejudice.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of July, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE